UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| HANAN ENVIRONMENTAL SYSTEMS, LLC, § § |
| Plaintiff, § |
| § |
| v. § CIVIL ACTION NO. H–_____ |
| § |
| TKS CONTROL SYSTEMS, INC. § |
| § JURY DEMANDED |
| Defendant § |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Plaintiff Hanan Environmental Systems, LLC ("HES") files this Original Complaint against TKS Control Systems, Inc. ("TKS"), and in support thereof would show the following:

### Parties

1.  Hanan Environmental Systems, LLC is a Texas limited liability company doing business within the Southern District of Texas.

2.  Defendant TKS Control Systems, Inc. is an Illinois corporation doing business in the State of Texas. TKS may be served with process by serving its registered agent: Kimberly Neal, 88 Templeton Dr., Oswego, Illinois 60543.

### Jurisdiction and Venue

3.  This Court has jurisdiction pursuant to 28 U.S.C. §1332, and other applicable law. Venue is proper in this Court because the unlawful practices alleged in this complaint were committed in whole or in part in the Southern District of Texas.

**Factual Background**

<u>Hanan Environmental Systems</u>

4.    Hanan Environmental Systems specializes in sales, design, engineering, and commissioning of air pollution control equipment.

5.    Hanan Environmental Systems was formed by Randel Hanan in 2007. Randel Hanan has been in the air pollution control business for approximately 19 years. During those 19 years, Hanan started a successful original equipment manufacturing company, developed business and growth for other companies, along with handling and supervising the design, manufacture, sale, installation, and servicing of air pollution control systems.

<u>HES's Agreement with TKS Control Systems</u>

6.    TKS Control Systems was in the business of fabricating parts for other original equipment manufacturing companies. Randel Hanan and TKS have worked together since 1998.

7.    In 2008, Hanan Environmental Systems and TKS reached an oral agreement to market, manufacture, sell, install, and service air pollution control systems. Under this agreement, Hanan would use his contacts, industry knowledge and expertise to help turn TKS from a company that fabricated parts for other original equipment manufacturers to a company that would be an original equipment manufacturer, and thus sell equipment directly to end customers. This would include accepting purchase orders directly from customers and handling the transaction from sale to installation. This agreement also included Hanan teaching TKS to market, design, and manufacture their own equipment and sell that equipment under TKS's name.

8.    Under the HES and TKS's agreement, HES was primarily responsible for client development and sales. TKS was responsible for manufacturing and labor. HES and TKS

2

agreed to split all profits and expenses 50% to each of them. HES was entitled to 50% of the profits related to any sales order that was placed by a customer with whom HES solicited, designed for, helped in the sales process, facilitated the relationship, or secured as a TKS customer. HES was entitled to 50% of the profits on sales orders that HES had secured or had involvement with even if HES did not obtain the actual sales order. If HES performed additional work on the project after receiving the sales order, TKS agreed to pay HES for that additional work. TKS also agreed to reimburse HES for expenses incurred related to any additional work HES performed after the sales order was placed.

9. TKS handled all the money and calculated all the profits and amounts owed to HES related to their agreement. TKS did not provide HES with the documentation and calculations supporting the payments made to HES. HES trusted and relied on TKS to accurately calculate and pay the 50/50 split of profits.

## TKS Refuses to Honor Its Agreement

10. Based on current information and belief, TKS has not paid HES its 50% of the profits pursuant to their agreement. Further, based on information and belief, TKS has excluded HES from participating in the profits of additional projects with the same customer(s) that HES was instrumental in obtaining and/or developing for TKS. Additionally, in 2013 and 2014, TKS did not pay HES for all extra work performed on certain projects and all associated expenses.

11. After years of HES teaching TKS the business of selling, designing, installing, and servicing air pollution control systems, TKS informed HES that it was terminating their agreement. Based on information and belief, TKS is continuing to market and sell air pollution control systems that were designed by HES.

The Parties' Agreement on China

12.     Around 2010, HES and TKS discussed establishing a TKS presence in China to help facilitate sales overseas.  TKS represented to HES that it would continue the parties' agreement and that TKS would pay 50% of the expenses related to promoting TKS and seeking business in China.  In reliance on these representations, HES hired an electrical engineer, Shaojun Wang, with experience in the air pollution control business who could help with sales, engineering, design, installation, and service.  It was important to have someone located in China to be able to perform all of these functions on behalf of TKS in order to obtain and maintain customers.  TKS subsequently worked with Mr. Wang and HES in signing agreements for other sales representatives in China and Korea. Mr. Wang and the representatives then spent considerable time, effort, and expense in providing TKS literature and equipment quotations to potential customers, marketing the TKS name, and developing a TKS presence in China.  HES incurred expenses related to promoting TKS in China, including paying Mr. Wang a salary.

TKS Refuses to Honor its Obligations and Representations for China

13.      Despite its representations to pay for half the expenses related to promoting business in China, TKS refused to pay for 50% of the expenses in China including Mr. Wang's salary.  TKS repeatedly told HES that it would pay 50% of the expenses once business picked up.  TKS now refuses to reimburse HES for any expenses related to promoting TKS in China.

**Conditions Precedent**

14.     All conditions precedent to Plaintiff's recovery have been performed or have occurred.

## CAUSES OF ACTION

15. Plaintiff asserts the following causes of action jointly and/or in the alternative:

### Breach of Contract

16. Plaintiff realleges and incorporates by reference each and every allegation and statement contained in the foregoing paragraphs. Under the parties' agreement, HES was to receive 50% of the profits on each project and additional compensation and reimbursement of expenses for additional work performed after receiving a sales order. Defendant TKS breached the agreement by not paying HES the full 50% of profits on all projects. Defendant TKS also breached the agreement by not paying HES for all additional work performed and reimbursing all expenses HES incurred.

17. Defendant TKS also breached the agreement to reimburse HES for 50% of the expenses related to promoting TKS and seeking business in China, including the salary of Mr. Wang.

18. Defendant TKS's breaches have caused HES damages.

### Fraud

19. Plaintiff realleges and incorporates by reference each and every allegation and statement contained in the foregoing paragraphs. TKS represented to HES that it would pay 50% of the expenses relating to seeking business in China. HES relied on these representations in hiring Mr. Wang in China to promote TKS and seek business in China. TKS's representations were false and caused HES damages.

### Breach of Fiduciary Duty

20. Plaintiff realleges and incorporates by reference each and every allegation and statement contained in the foregoing paragraphs. Tim Neal of TKS and Randel Hanan of HES

have known and worked together since 1998. During that time, they have built a relationship of trust and confidence. In 2008, Mr. Neal expressed to Mr. Hanan that his friendship meant more than any business, yet expressed an interest in moving forward with a business relationship between TKS and HES where the profits would be split 50/50. TKS was solely responsible for receiving the payments on their projects and in calculating and paying out the profits. Because of their relationship, HES trusted and relied on TKS to properly and accurately calculate and pay HES the profits owed to HES based upon their relationship. Therefore, TKS owed HES a fiduciary duty. TKS breached that fiduciary duty by not paying HES the full amount of the profits owed to HES and potentially by not disclosing other projects which HES should have been paid a commission. Because of TKS's breach, HES has suffered damages.

## Quantum Meruit

21. Plaintiff realleges and incorporates by reference each and every allegation and statement contained in the foregoing paragraphs. Additionally and/or alternatively, HES spent significant time and expense in promoting TKS and seeking business in China. TKS knew or should have known that HES expected compensation for its time and expenses incurred and TKS utilized and accepted HES's efforts by seeking business in China. HES also spent significant time and expense in soliciting, designing, helping in the sales process, facilitating relationships, securing customers, and performing additional work for customers on behalf of TKS. TKS knew or should have known that HES expected compensation for its time and expenses incurred while accepting HES's efforts. Because HES expected compensation and TKS knew of such expectation, TKS's acceptance of HES's services without compensation and reimbursement of expenses resulted in damages.

**Promissory Estoppel**

22. Plaintiff realleges and incorporates by reference each and every allegation and statement contained in the foregoing paragraphs. Additionally and/or alternatively, TKS promised that it would pay HES 50% of all profits and expenses related to HES's promotion of business in China. HES relied on TKS's promises by hiring Mr. Wang to seek business on TKS's behalf and spending a significant amount of time developing and promoting TKS business in China. Additionally, TKS promised HES that it would split the profits 50/50 on all projects, pay HES for additional work performed on those projects, and reimburse HES for expenses incurred. HES relied on TKS's promises in performing services and incurring expenses. HES's reliance on TKS's promises was reasonable and substantial. HES would not have engaged in these actions without TKS's promise. TKS knew or reasonably should have known that HES was relying on TKS's promise. TKS's actions have caused HES damages.

**Declaratory Judgment**

23. HES incorporates by reference all paragraphs above. Plaintiff HES seeks a declaration that HES is entitled to 50% of all profits on all projects with a sales order for customers that HES was involved in soliciting, designing, helping in the sales process, facilitating relationships, and securing customers when TKS is paid on each such project, including, without limitation, TKS's Greif Warminster and Fagerdala projects.

**Attorney's Fees**

24. HES seeks to recover from TKS reasonable and necessary attorneys' fees to prosecute these claims pursuant to TEX. CIV. PRAC. & REM. CODE § 38.001 *et. seq.* and other applicable law, for the preparation and trial of this case and various stages of appeal, if any,

7

including additional attorneys' fees in the event it is necessary to collect this amount of money once a judgment becomes final.

## Punitive Damages

25. The acts of TKS as described above were fraudulent, intentional, willful, and malicious as defined in TEX. CIV. PRAC. & REM. CODE § 41.001 *et seq.* HES is therefore entitled to recover punitive damages as the jury might award over and above the actual legal damages in an amount that will adequately and properly punish TKS, that will serve as a deterrent to it and others, and set an example to the community.

## Jury Demand

26. HES hereby requests a jury trial.

WHEREFORE, Plaintiff HES prays that upon final trial it have and recover of and from Defendant TKS actual and punitive damages, including pre-judgment interest thereon at the highest applicable legal rate. Further, Plaintiff prays for recovery of reasonable and necessary attorneys' fees, expenses, and costs. Plaintiff prays for post-judgment interest at the highest applicable legal rate. Plaintiff further prays for such other relief to which it may be justly entitled.

**CARTER & BACHYNSKY, L.L.P.**

By:  /s/ Ashton Bachynsky
　　　Ashton Bachynsky
　　　State Bar No. 24001673
　　　Attorney-In-Charge for Plaintiff
　　　440 Louisiana Street, Suite 900
　　　Houston, Texas 77002
　　　Telephone: (713) 225-9600
　　　Telecopier: (713) 236-7774

ATTORNEYS FOR PLAINTIFF

OF COUNSEL:

Darryl Carter
State Bar No. 03913080
CARTER & BACHYNSKY, L.L.P.
440 Louisiana Street, Suite 900
Houston, Texas 77002
Telephone:  (713) 225-9600
Telecopier:  (713) 236-7774
ATTORNEYS FOR PLAINTIFF